UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| CHELSEA A. CONWAY, ) | Case No. 09-52394-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| CHELSEA A. CONWAY, ) | **Adversary No. 12-4033-659** |
| ) | |
| ) | **PUBLISHED** |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| NATIONAL COLLEGIATE TRUST, and ) | |
| FIRST MARBLEHEAD CORP., INC., ) | |
| ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Amended Complaint to Determine Dischargeability of a Debt filed by Chelsea Conway on June 19, 2012, Answer of Defendant National Collegiate Trust to Amended Complaint to Determine Dischargeability of a Debt and Answer of Defendant First Marblehead to Amended Complaint to Determine Dischargeability of a Debt. A trial was held on December 11, 2012, at which Debtor Chelsea A. Conway appeared *pro sé* and Creditors National Collegiate Trust and First Marblehead Corporation appeared by counsel. Argument was presented, exhibits were admitted[1] and the matter was taken under submission. Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT**:

Debtor Chelsea A. Conway (hereinafter "Debtor") filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on December 7, 2009 and received a discharge on March 16, 2010. On December 16, 2011, Debtor filed a Motion to Reopen her case and the motion was granted on December 20, 2011. Debtor commenced this Adversary Proceeding on January 24,

---

[1] Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 16, 17 and 19 were admitted. Defendants' Exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, T and V were admitted.

2012. Debtor initially sought a determination that her student loans are dischargeable as against Creditor National Collegiate Trust (hereinafter "NCT"), Creditor First Marblehead Corporation Inc. (hereinafter "First Marblehead"), Sallie Mae/SLM Corporation and Key Bank. The only remaining disputes are the loans held by NCT which are serviced by First Marblehead.[2]

Debtor is a thirty-two year old single female with no dependents. From October 21, 2003 through September 25, 2006, Debtor entered into 15 student loans with NCT in the original total amount of $70,100.00 (hereinafter collectively the "Loans"). The interest rates on the Loans range from 3.25% to 5.150%. Since August 22, 2005, Debtor has been granted part-time deferments, temporary forbearances and forbearances on the Loans. As of November 5, 2012, Debtor has repaid a total of $5,734.48 on the Loans. As of November 5, 2012, the total outstanding amount for the Loans was $118,579.66, including principal and interest.[3]

Debtor began her college education at Saint Louis Community College in the Fall of 1999 and transferred to Webster University in the Spring of 2003. From Spring 2003 through Spring 2005, Debtor's expenses at Webster University were approximately $22,300.00, including tuition and fees.[4] While at Webster University, Debtor borrowed a total of $37,100.00 from NCT.[5] Debtor graduated from Webster University in the Spring of 2005 with a Bachelor of Arts in Media Communications. In the Fall of 2005, Debtor returned to Saint Louis Community College and

---

[2] On August 22, 2012, Order Approving Stipulation to Discharge Educational Loan Debt Between Plaintiff and Sallie Mae, Inc. was entered which settled all matters by consent as between Debtor and Sallie Mae/SLM Corporation. On November 20, 2012, Order Approving Stipulation to Discharge Educational Loan Debt Between Plaintiff Chelsea Conway and Defendant Key Bank was entered which settled all matters by consent as between Debtor and Key Bank.

[3] Specifically, the balance on each of the Loans as of November 5, 2012, including principal and interest is: $6,254.50, $5,172.49, $6,841.20, $6,750.90, $6,727.25, $13,088.78, $6,625.63, $11,680.97, $5,369.62, $7,164.90, $10,627.54, $8,565.10, $8,616.80, $7,590.09 and $7,503.89. See Joint Stip. of Facts, Ex. 1.

[4] Debtor's tuition and fees minus scholarships and grants totaled: $5,035.00 for the Spring of 2003, $2,375.00 for the Summer of 2003, $4,285.00 for the Fall of 2003, $4,135.00 for the Spring of 2004, $1,335.00 for the Summer of 2004, $4,000.00 for the Fall of 2004 and $1,135.00 for the Spring of 2005. Pl. Ex. 19.

[5] Specifically, Debtor borrowed the following amounts from NCT: $3,600.00 on October 21, 2003; $3,000.00 on December 19, 2003, $4,000.00 on April 23, 2004, $4,000.00 on July 14, 2004, $4,000.00 on August 6, 2004, $8,000.00 on November 3, 2004, $4,000.00 on November 5, 2004 and $6,500.00 on April 26, 2005. See Pl. Ex. 1.

completed additional courses. Debtor completed her additional studies at Saint Louis Community College in the Spring of 2007. While her specific expenses at Saint Louis Community College are unknown,[6] Debtor registered for a total of 27 credit hours from Fall 2005 through Spring 2007 and Debtor borrowed a total of $33,000.00 from NCT during that time.[7]

Debtor held a full-time position at American Equity Mortgage as a Loan Sales Analyst which she began in October of 2005. In July 2007, Debtor was laid off from American Equity Mortgage, began receiving unemployment benefits and started working part-time in temporary office positions. In December 2007, Debtor began working full-time at Administaff of Texas d/b/a The Elvis Cruise as a guest specialist. In September 2008, Debtor was laid off from The Elvis Cruise and again started receiving unemployment benefits as well as working part-time in temporary office positions. In April 2009, Debtor began waitressing part-time for Catering St. Louis at The Boathouse in Forest Park. Debtor also worked as a Bank Teller at Stifel Bank and Trust from December of 2009 through April of 2010. Plaintiff's Exhibit 17.

Debtor's adjusted gross income was $21,115.00 for 2008, $16,127.00 for 2009, $25,256.00 for 2010 and $25,390.00 for 2011. Debtor also received income tax refunds totaling approximately $3,000.00 between 2008 and 2011.[8] Currently, Debtor works two part-time jobs: waitressing approximately 20 hours a week at The Boathouse in Forest Park, where on July 7, 2012, Debtor stated that she earned approximately $1,665.55 per month and waitressing approximately 20 hours a week at P.F. Chang's China Bistro, where on July 7, 2012, Debtor stated that she earned approximately $795.90 per month. Debtor's income fluctuates due to the seasonal hours of operation at The Boathouse in Forest Park and as of December 3, 2012, Debtor's monthly income

---

[6] Debtor did not provide her expenses for Saint Louis Community College.

[7] Specifically, Debtor borrowed the following amounts from NCT: $3,000.00 on June 14, 2005, $4,000.00 on August 30, 2005, $6,000.00 on October 20, 5005, $5,000.00 on March 16, 2006, $5,000.00 on June 19, 2006, $5,000.00 on July 31, 2006 and $5,000.00 on September 25, 2006. Pl. Ex. 1.

[8] Debtor received income tax refunds in the following amounts: $460.59 on May 5, 2009 for the 2008 tax period; $928.45 on April 2, 2010 for the 2009 tax period; $891.95 on April 5, 2011 for the 2010 tax period; and $831.14 on April 2, 2012 for the 2011 tax period. Pl. Ex. 4.

was $1,379.97. Debtor has also received $625.00 in settlement proceeds from Farmer's Insurance Company in relation to a car accident which occurred in August of 2012 and Debtor anticipates an additional $1,000.00 in forthcoming settlement proceeds.[9]

Elsewhere in Debtor's discovery responses,[10] Debtor stated that her total monthly income is $2,040.36 while her monthly expenses total $1,737.25. These expenses include: $257.50 for rent, $98.00 for electricity and heating, $158.00 for cell phone service, $300.00 for food, $50.00 for clothing, $25.00 for laundry and dry cleaning, $30.00 for medical and dental care, $380.00 for transportation, $32.00 for homeowner's or renter's insurance, $5.00 for personal property taxes, $130.75 for federal student loan payments, $142.00 for out-of-pocket medical expenses, $32.00 for personal care and $97.00 for miscellaneous items. As a result, Debtor's monthly net income is $303.11. These figures represent an increase from the amounts Debtor originally reported at the time of her Chapter 7 Petition in that at that time, Debtor's Schedule I reported monthly income of $1,397.67 while Schedule J reported monthly expenses of $1,350.50 for a surplus of $47.17.[11]

Further, Debtor states she suffers from anxiety, depression, Attention Deficit Disorder (hereinafter "ADD"), scoliosis of the neck, arthritis in her back, an irregular heart beat, a painful mouth caused by her wisdom teeth and unfilled cavities, all of which limit her ability to work in certain types of jobs or for more than 40 hours a week.[12] Debtor also obtains counseling to assist with her overall mental health. Debtor states that many of her ailments are a result of a serious 2001 car accident. Debtor urges that her back pain will increase throughout her life and will impact

---

[9] See Def. Ex. V.

[10] See Def. Ex. T; Joint Stip. of Facts, ¶ 15.

[11] At that time Debtor's Schedule I reflected monthly income of $1,397.67. On her Schedule J, Debtor listed $1,350.50 in monthly household expenses. These expenses included: $257.50 for rent, $98.00 for electricity and heating, $110.00 for cell phone service, $168.00 for food, $50.00 for clothing, $30.00 for laundry and dry cleaning, $25.00 for medical and dental care, $152.00 for transportation, $32.00 for homeowner's or renter's insurance, $5.00 for personal property taxes, $184.00 for car payments, $142.00 for personal care and $97.00 for pet care. Debtor's Schedule J reflected a monthly net income of $47.17.

[12] Debtor's medical records were admitted into evidence during trial. They include her chiropractic case history and reports, her drug prescriptions, her counseling bills and her dental service reports. Pl.'s Ex. 16.

-4-

her future ability to work, particularly when Debtor reaches her fifties. Debtor's radiologist, Dr. Cusumano, noted "minimal dextroscoliosis," that Debtor's "vertebrae are intact with no fracture or bone destruction" and that "[n]o disc space abnormality is evident."[13] Debtor's medical history also indicates that her chiropractic treatment for her neck and back pain, caused by whiplash, is improving.

Debtor states she has sent out over two hundred resumes and job applications in an attempt to find full-time employment and higher-paying jobs suitable to her education level, but has been unsuccessful, particularly due to the poor economy and competitive job market. However, Debtor alleges that her college education is "dubious in value" because her degree in media communications has left her with no specific area of expertise and no usable job skills or experience that would render her qualified for any gainful employment. Debtor relies on *Brunner v. N.Y. State of Higher Education Services Corp.,* 831 F.2d 395 (2d Cir. 1987) as well as *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andres),* 661 F.2d 702, 704 (8th Cir. 1981) for the position that the Loans are dischargeable pursuant to Section 523(a)(8) in that repayment will cause Debtor an undue hardship.

Debtor argues that if she is required to repay the debt to NCT she will essentially be denied a fresh start which is inconsistent with the Bankruptcy Code. Debtor argues that she cannot currently afford to repay the $118,579.66 owed to NCT because she does not earn a sufficient income to do so in that she would need to earn at least $100,000.00 a year to maintain a reasonable standard of living and service the Loans. Debtor argues that the Loans require annual payments of over $10,000.00 and that meeting her Loans payment obligations would render Debtor below the poverty line. Debtor also argues that because her education is of little value, this debt should be treated as ordinary unsecured debt.

NCT and First Marblehead argue that Debtor has done no more than request relief because she cannot find employment in her field of study and allege medical conditions that have the

---

[13] Pl. Ex. 16.

possibility of becoming disabling in the future. NCT and First Marblehead argue that Debtor is very intelligent, has the ability to increase her work hours and maintain gainful employment. Thus, NCT contends Debtor has failed to meet her burden of showing the existence of an undue hardship.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2012) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (2012). Venue is proper in this District under 28 U.S.C. § 1409(a) (2012).

## CONCLUSIONS OF LAW

Section 523(a)(8) of Title 11 of the Bankruptcy Code states in relevant part: "[a] discharge under Section 727 ... of this title does not discharge an individual debtor from any debt -- unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents, for – an educational benefit ... or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit ... or any other educational loan that is a qualified education loan." 11 U.S.C. § 523(a)(8)(A), (B) (2012). This section was designed by Congress to prevent abuse of the bankruptcy system by student borrowers who reap the benefits of access to higher education but seek to escape repayment of their student loan obligations upon graduation. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003) ("The policy of this provision [is] clear. Congress intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligations from doing so."); *see also Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 466-75 *reprinted in* 1978 U.S.C.C.A.N. 5787). "The Commission on the Bankruptcy Laws of the United States recommended to Congress that student loans 'should not as a matter of policy be dischargeable before (the debtor) has demonstrated that for any reason he (or she) is unable to earn sufficient income to maintain himself (or herself) and his (or her) dependents and to repay the

-6-

educational debt.'" *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704 (8th Cir. 1981) (citing *In re Wegfehrt,* 10 B.R. 826, 830 (Bankr. N.D. Ohio 1981) (quoting Comm'n on the Bankruptcy Laws of the United States, Report, Pt. II, 140 n. 15)).  The debtor bears the burden of establishing "undue hardship" by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 288-91, 111 S.Ct. 654, 660-61, 112 L.Ed.2d 755 (1991); *see also Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009).

The Eighth Circuit has adopted a "totality of the circumstances approach to the 'undue hardship' inquiry." *In re Long*, 332 F.3d at 554 (rejecting the *Brunner* test); *see also In re Bott,* 324 B.R. 771, 775 (Bankr. E.D. Mo. 2005).  Accordingly, in determining whether a debtor's student loans cause an undue hardship, a Court considers: "(1) debtor's past, present and reasonably reliable future financial resources; (2) a calculation of the debtor's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *Id.* at 554 ("[I]f the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged.").  Applying the totality of the circumstances test to this matter, the Court will analyze each factor in turn.

**I. Plaintiff's Past, Present And Reasonably Reliable Future Financial Resources**

A determination of a debtor's future financial resources and expenses is made in light of the testimony and evidence produced at the hearing. *In re Bott,* 324 B.R. at 775 (citing *In re Standfuss,* 245 B.R. 356, 360 (Bankr. E.D. Mo. 2000)).  Determination of a debtor's past, present, and reasonably reliable future financial resources circumstances "will require a special consideration of the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position." *In re Long*, 322 F.3d at 554-55.  Consequently, the fact that a debtor presently cannot repay a debt is not enough to support a finding of undue hardship. *See Schmidt v. SLM Corp. (In re Schmidt)*, 294 B.R. 741, 751 (Bankr. W.D. Mo. 2003).  Claims regarding the general state of the

current economy are not enough to show that the debtor faces unique circumstances that would render repayment of the debt an undue hardship.  *See Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund)*, 440 B.R. 168, 174 (B.A.P. 8th Cir. 2010) ("The current economic climate cannot be a basis for meeting the high standard for dischargeability because everyone is in this recession together.").

Here, Debtor's economic resources are stable.  Despite layoffs, Debtor has been able to find full-time employment in the past and her average adjusted gross income from 2008 through 2011 was $21,972.00 – which is an average monthly gross income of $1,831.00.  She has also received an average of $778.03 in annual income tax refunds during that same period, in addition to $625.00 in settlement proceeds which also could have been used to pay NCT.  Debtor also anticipates receipt of an additional $1,000.00 in settlement proceeds which can be used to pay NCT.  Debtor holds two part-time jobs and usually works approximately 40 hours a week.  While her monthly income fluctuates, Debtor stated during discovery that she earned approximately $2,040.36 a month – $642.69 a month more than Debtor reported in 2009 when she filed her Chapter 7 case.  The Court acknowledges that Debtor's income is presently lower due to seasonal hours, however, Debtor's work hours will likely increase in the upcoming months.  There is no evidence that Debtor's current employment will end or that her wages will not continue to increase.

Debtor alleges, without evidentiary support, that she will be unable to obtain higher-paying employment in the future due to a number of issues including her lack of useable job skills, lack of experience, lack of ability and her general inability to work more than 40 hours a week due to her health.  Debtor has presented no evidence that her financial difficulties are exceptional or that they will persist into the future, particularly as the economy recovers.  Lastly, the record does not show that Debtor lacks useable job skills for higher-wage jobs.  Quite to the contrary; Debtor's written submissions to this Court evidence well-developed writing and reasoning skills.  Debtor's demeanor and exceptional focus during trial reveals that Debtor is articulate, poised, intelligent and quite capable. Debtor's demonstrated ability to apply these skills is almost certainly a product of her

undergraduate education, which was made possible by obtaining the Loans. Even if Debtor is correct that her degree in media communications has left her with no specific area of expertise, as a college graduate, she undoubtedly has the education and transferable skills that will allow her to obtain a more lucrative career in the future.

Additionally, Debtor contends that her student loan debt owed to NCT should be discharged because she will never earn the six figures a year that is needed to repay such a sizable debt. However, the size of the debt is partly a function of excessive borrowing from NCT to finance her undergraduate education. Despite obtaining scholarships and grants, Debtor borrowed approximately $14,800.00 more than needed to attend Webster University. She also borrowed approximately $33,000.00 in one year to attend Saint Louis Community College where charges for tuition and fees are vastly lower than the loan amount.[14] Debtor made the decision to borrow these sums. While Debtor may prefer an annual salary of $100,000.00 to pay her debt to NCT, this Court's inquiry is whether Debtor's future financial resources are *reasonably reliable* for the repayment of her debt. Debtor has at least 30 years left to navigate the job market and upon this Court's evaluation of the facts, Debtor has reasonably reliable future financial resources to pay NCT.

**II. Plaintiff's Reasonable And Necessary Living Expenses**

The second factor in the totality of the circumstances test requires an inquiry into whether a debtor's living expenses are reasonable and necessary. "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *In re Jesperson*, 571 F.3d at 780 (quoting *DeBrower v. Pa. Higher Educ. Assistance Agency (In re DeBrower)*, 387 B.R.

---

[14] While Debtor failed to provide a record of her expenses, a search of the Saint Louis Community College's web page reveals that for the 2012-2013 academic year tuition including fees are $93.00 per credit hour for in district students and $139.00 per credit hour for out of district students. This represents a $5.00 increase from the rates charged for the 2011-2012 academic year – $88.00 per credit hour for in district students and $134.00 for out of district students. *See* St. Louis Community College Tuition and Fees, http://www.stlcc.edu/Admissions_and_Registration/Tuition_and_Fees (last visited Feb. 11, 2013). Debtor enrolled in a total of twenty-seven credit hours while at Saint Louis Community College from the Fall of 2005 to the Spring of 2007. Assuming yearly rate increases remained constant, Debtor's charges for tuition and fees would have been less than $5,000.00.

-9-

587, 590 (Bankr. N.D. Iowa 2008)). A student loan debt should not be discharged where the debtor's financial resources allow her to maintain a minimal standard of living while repaying the debt. *See In re Long*, 322 F.3d at 554-55. "A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." *Brown v. Am. Educ. Servs., Inc. (In re Brown)*, 378 B.R. 623, 626 (Bankr. W.D. Mo. 2007) (citations omitted).

Debtor reports that her combined monthly income is $2,040.36 while her monthly expenses total $1,737.25. Upon this Court's review of Debtor's expenses, the Court concludes that Debtor's only excessive monthly expense is the $158.00 for cell phone service. Debtor can find a more modest cellular phone plan. Additionally, Debtor's budget includes $142.00 in out-of-pocket monthly medical expenses due to her lack of medical insurance. Her out-of-pocket medical expenses will decrease once she obtains a full-time job with medical benefits. Although these adjustments will require Debtor to live a frugal lifestyle, with these changes, she will be able to make some repayment of the Loans while maintaining a minimal standard of living.

### III. Other Relevant Facts and Circumstances

The final factor in the totality of the circumstances test requires consideration of any other facts and circumstances relevant to the undue hardship inquiry. The Court acknowledges that Debtor has repaid a total of $5,734.48 to NCT since August 22, 2005. Debtor has been granted part-time deferments, temporary forbearances and forbearances on all 15 Loans. However, Debtor argues that she will be unable to obtain or sustain gainful employment in the future because she has physical and mental health problems that will increase in severity, resulting in long-term disability. Specifically, Debtor states she has scoliosis of the neck and arthritis in her back that will result in increased pain into her fifties. She also claims she suffers from ADD, anxiety and depression which makes it difficult for her to focus at work and limits her ability to work in certain types of jobs or for more than 40 hours a week. Debtor's chiropractic records indicate that she has "minimal dextroscoliosis." The medical records also state that her condition is moderate, she has

no fracture or bone destruction and her condition has been improving. Moreover, Debtor's chiropractic records indicate that her treatment is for whiplash, not arthritis or scoliosis. Plaintiff's Exhibit 16. Thus, Debtor has put forth no evidence of scoliosis of the neck or arthritis in her back that might affect her ability to work in the future. As for her mental health, at most, the evidence shows that Debtor is undergoing counseling. Debtor has provided no medical evidence from her physician, psychologist or any other health professional that her mental health currently affects her ability to function in a work setting today or in the future. The Court recognizes that expert testimony is not required to prove mental health restrictions on a debtor's ability to work, *see generally In re Shaffer,* 481 B.R. 15, 21 (B.A.P. 8th Cir. 2012), nonetheless, more is required for this Court to conclude today that Debtor's health sufficiently restricts Debtor's ability to work and repay the Loans. There is no evidence of permanent or long-term disability that would prevent Debtor from continuing to work.

In sum, Debtor is a young intelligent individual with no dependents who has the capacity to obtain a lucrative career in the future. With a few reduction in expenses and application of the talent that she has demonstrated before this Court, Debtor will be able to repay the Loans while maintaining a reasonable standard of living. Debtor has failed to show by a preponderance of the evidence that repayment of the Loans which total $118,579.66 owed to NCT would result in an undue hardship. By separate Order, judgment will be entered accordingly.

/s/ Kathy A. Surratt-States
KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: April 3, 2013
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

National Collegiate Trust
Attn: Bankruptcy Dept.
1 Cabot Road, 3rd Floor
Medford, MA 02155

First Marblehead Corp., Inc.
800 Boylston St, 34th Fl
Boston, MA 02199

Chelsea A. Conway
4055 Hartford Street, Apt. #1
Saint Louis, MO 63116-3928

Melinda J. Maune
Martin, Leigh, Laws & Fritzlen P.C.
16305 Swingley Ridge Road
Suite 350
Chesterfield, MO 63017